NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
DIANA L. PAULI (Cal. Bar No. 150289)
Assistant United States Attorney
International Narcotics, Money Laundering,
  and Racketeering Section
      1400 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-3899
      Facsimile: (213) 894-0142
      E-mail:    diana.pauli@usdoj.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

                 UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                 v.<br><br>SALVADOR SENDIS RAMIREZ,<br><br>            Defendant. | No. CR 08-713(C)-DSF<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A): EXHIBITS |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California, hereby files this opposition to defendant's motion to
reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

     This opposition is based upon the attached memorandum of points
and authorities, the separately filed exhibits, the files and records

\\

\\

1   in this case, and such further evidence and argument as the Court may

2   permit.

3    Dated: November 2, 2020          Respectfully submitted,

4                                     NICOLA T. HANNA
                                      United States Attorney
5
                                      BRANDON D. FOX
6                                     Assistant United States Attorney
                                      Chief, Criminal Division
7

8                                     _____/s/_____
                                      DIANA L. PAULI
9                                     Assistant United States Attorney

10                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................1

      A.   Defendant's Crimes and Sentence..........................1

      B.   Incarceration and Projected Release Date.................2

      C.   Defendant's Current Motion for Compassionate Release......3

      D.   The Bureau of Prisons' and Congress's Response to
           COVID-19.................................................3

III.  LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE......................6

IV.   ARGUMENT......................................................8

      A.   Defendant Has Failed to Demonstrate an "Extraordinary
           and Compelling" Reason to Allow Release in His Case.......9

           1.   Defendant is not medically eligible for
                compassionate release..............................9

           2.   Defendant remains a danger to the community,
                likewise defeating his eligibility.................13

      B.   Even If Defendant Were Otherwise Eligible, 18 U.S.C.
           § 3553(a) Factors Do Not Support a Shorter Sentence......14

V.    CONCLUSION...................................................17

# TABLE OF AUTHORITIES

DESCRIPTION                                                    PAGE(S)

**FEDERAL CASES**

Dillon v. United States,
    560 U.S. 817 (2010).....................................6, 7, 10

United States v. Alam,
    --- F.3d ---,
    2020 WL 2845694 (6th Cir. Jun. 2, 2020)......................3

United States v. Applewhite,
    No. 08-CR-60037,
    2020 WL 137452 (D. Or. Jan. 13, 2020)....................13, 14

United States v. Ayon-Nunez,
    No. 16-CR-130-DAD,
    2020 WL 704785 (E.D. Cal. Feb. 12, 2020)....................15

United States v. Brooker,
    2020 WL 5739712 (2nd Cir. September 25, 2020)................10

United States v. Chambliss,
    948 F.3d 691 (5th Cir. 2020).................................8

United States v. Ebbers,
    --- F. Supp. 3d. ---,
    2020 WL 91399 (S.D.N.Y. Jan. 8, 2020)......................8, 9

United States v. Eberhart,
    2020 WL 1450745 (N.D. Cal. Mar. 25, 2020)................10, 11

United States v. Gileno,
    2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020)..............15

United States v. Gotti,
    No. 02-CR-743,
    2020 WL 497987 (S.D.N.Y. 2020)..............................13

United States v. Greenhut,
    No. 18-CR-48-CAS,
    2020 WL 509385 (C.D. Cal. Jan. 31, 2020).....................8

United States v. Hamilton,
    715 F.3d 328 (11th Cir. 2013)................................8

United States v. Hernandez,
    2020 WL 5203428 (E.D. Cal. Sept. 1, 2020)....................5

United States v. Hir,
    517 F.3d 1081 (9th Cir. 2008)...............................13

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Mangarella,
        No. 06-CR-151,
        2020 WL 1291835 (W.D.N.C. Mar. 16, 2020).......................8

United States v. Nasirun,
        No. 99-CR-367,
        2020 WL 686030 (M.D. Fla. Feb. 11, 2020)......................10

United States v. Raia,
        954 F.3d 594 (3d Cir. 2020)...........................1, 9, 11

United States v. Risley,
        2020 U.S. Dist. (E.D. Cal. Aug. 17, 2020)......................5

United States v. Rodriguez,
        CR 11-148-JVS,
        ECF No. 2021 (C.D. Cal. Mar. 21, 2020).........................1

United States v. Shah,
        No. 10-70-CJC, ECF No. 329, at 3..............................15

United States v. Urso,
        No. 03-CR-1382,
        2019 WL 5423431 (E.D.N.Y. Oct. 23, 2019).....................13

United States v. Wages,
        271 F. App'x 726 (10th Cir. 2008).............................8

United States v. Willingham,
        No. CR113-010,
        2019 WL 6733028 (S.D. Ga. Dec. 10, 2019).......................9

United States v. Willis,
        382 F. Supp. 3d 1185 (D.N.M. 2019)............................8

**STATUTES**

18 U.S.C. § 3142(g)......................................13, 14

18 U.S.C. § 3553(a).............................1, 14, 16, 17

18 U.S.C. § 3582......................................passim

18 U.S.C. § 4205(g).....................................11, 16

28 U.S.C. § 994(t)........................................7, 14

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

**OTHER AUTHORITIES**

BOP, COVID-19 Coronavirus (updated daily at 12pm Pacific),
      available at https://www.bop.gov/coronavirus/index.jsp
      (last visited November 1, 2020) ...............................5

California Executive Order N-33-20 (March 19, 2020),
      available at https://covid19.ca.gov/img/Executive-Order-N-
      33-20.pdf......................................................14

Centers for Disease Control, Coronavirus Disease 2019 (COVID-
      19)--People Who Are At Higher Risk, available at
      https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
      precautions/people-at-higher-risk.html (last accessed
      November 1, 2020) ........................................... 12

Department of Justice, Statement of BOP Director and Medical
      Director Before the Senate Committee on the Judiciary (Jun.
      2, 2020),
      available at
      https://www.bop.gov/resources/news/pdfs/06022020_written_st
      atement.pdf....................................................4

Federal Bureau of Prisons, Overview of COVID-19 Pandemic
      Response Plan, August 31, 2020 available at
      https://www.bop.gov/foia/docs//Overview_of_COVID_Pandemic_R
      esponse_Plan_08312020.pdf......................................4

Federal Bureau of Prisons Program Statement No. 5050.50,
      Compassionate Release/Reduction in Sentence: Procedures for
      Implementation of 18 U.S.C. §§ 3582 and 4205(g) (January
      17, 2019),
      available at
      https://www.bop.gov/policy/progstat/5050_050_EN.pdf.......11, 16

Federal Bureau of Prisons,
      Correcting Myths About BOP and COVID-19,
      available at
      https://www.bop.gov/coronavirus/docs/correcting_myths_and_m
      isinformation_bop_covid19.pdf..................................5

Federal Bureau of Prisons, Action Plan Phase V (Mar. 31, 2020),
      available at
      https://www.bop.gov/resources/news/20200331_covid19_action_
      plan_5.jsp.....................................................4

Federal Bureau of Prisons, Update on COVID-19 (Mar. 24, 2020),
      available at
      https://www.bop.gov/resources/news/pdfs/20200324_bop_press_
      release_covid19_update.pdf.....................................4

iv

<u>**TABLE OF AUTHORITIES (CONTINUED)**</u>

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

Federal Bureau of Prisons, Updates to BOP COVID-19 Action Plan:
      Inmate Movement (Mar. 19, 2020),
      <u>available at</u>
      https://www.bop.gov/resources/news/20200319_covid19_update.
      jsp  ........................................................4

**<u>REGULATIONS</u>**

USSG § 1B1.13...............................................passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

"The COVID-19 pandemic is gripping the nation.  But that is a fate that affects all citizens, . . . not simply those incarcerated." Order, <u>United States v. Rodriguez</u>, CR 11-148-JVS, ECF No. 2021 (C.D. Cal. Mar. 21, 2020).  Thus, the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  <u>United States v. Raia</u>, 954 F.3d 594, 597 (3d Cir. 2020).  Nevertheless, without satisfying 18 U.S.C § 3582(c)(1)(A)'s eligibility criteria; based on speculation about an COVID-19 outbreak at USP Lompoc (where there are currently no inmate cases and four staff cases); and while ignoring the 18 U.S.C. § 3553(a) factors and his continuing danger to the community, defendant seeks immediate--<u>and permanent</u>--release from custody.  (ECF No. 2502, "Motion.")  Neither statutory authority nor public health demands such a windfall.  Moreover, defendant's logic would endorse the mass, permanent release of convicted criminals <u>into</u> a pandemic, without regard for the factors justifying their sentences or for the Bureau of Prisons' (BOP's) aggressive efforts to address COVID-19.  That is not a way to fight disease.  It is not a way to protect the public.

Defendant's compassionate-release motion must be dismissed, defendant is neither eligible for nor entitled to compassionate release.

### II.  STATEMENT OF FACTS

#### A.   Defendant's Crimes and Sentence

Salvador Sendis-Ramirez ("defendant") was charged in a large drug conspiracy.  Defendant was the subject of several wiretaps

during the course of the investigation.  Intercepted calls showed defendant was responsible for obtaining and redistributing substantial amounts of methamphetamine.  The methamphetamine was transported from Mexico to Southern California.  Defendant had multiple methamphetamine customers who, in turn, resold it. Defendant's home was searched on December 8, 2011, where approximately five kilograms of actual methamphetamine, a firearm, drug proceeds, pay/owe sheets, and the type of scales used to weigh drugs were found.  In his plea agreement, defendant agreed that his role in the drug-trafficking conspiracy involved at least 1.5 kilograms of actual methamphetamine.  He also admitted defendant possessed a firearm (and the ammunition for it) in furtherance of defendant's drug trafficking activity.  (ECF 1767, ¶ 17, pp. 9-11.)

Defendant's guideline computation in the Presentence Report ("PSR") was a base offense level of 35 and Criminal History Category 1 with a resulting guideline range of 168 to 210 months.  (PSR, p. 4.)  The parties recommended that the court impose a fifteen-year term.  (ECF 1957, p.15; ECF 1916, p. 5).  This was consistent with the plea agreement's terms.

This Court sentenced defendant to a total term of 180 months, which consisted of the 120-month mandatory minimum term for the § 846 drug conspiracy count followed by a consecutive, 60-month mandatory minimum sentence for the § 924(c) count.  (ECF 1971.)

## B.   Incarceration and Projected Release Date

Defendant is currently serving his sentence at USP Lompoc.  His projected release date is four years away, September 18, 2024.

1     **C.    Defendant's Current Motion for Compassionate Release**

2          In July 2020, defendant submitted a request for early release

3     and/or home confinement and a request for compassionate release to

4     the Warden and it was denied soon thereafter. (Govt. Exs. 4, 5.)

5          Now, before this Court, defendant claims entitlement to release

6     based on his completed treatment for Valley Fever

7     (Coccidioidomycosis), magnified by the risk of COVID-19.[1]  He also

8     claims to be a "stroke survivor" yet there appears to be no evidence

9     of such a significant medical event reflected in his recent medical

10    files or recitations of defendant's medical history.

11         The foundation of defendant's compassionate-release motion,

12    however, are allegations about the potential for an uncontained

13    COVID-19 outbreak at hid BOP facility where currently there are no

14    inmate cases and four staff cases.

15    **D.    The Bureau of Prisons' and Congress's Response to COVID-19**

16         The political branches have not been "insensitive in responding

17    to the COVID-19 pandemic." United States v. Alam, --- F.3d ---, 2020

18    WL 2845694, at *5 (6th Cir. Jun. 2, 2020).  To the contrary, BOP has

19    taken aggressive steps to protect inmates' health and to resist the

20    spread of COVID-19.  DOJ, Statement of BOP Director and Medical

21    Director Before the Senate Committee on the Judiciary (Jun. 2, 2020)

22

23         [1]  Defendant's recent BOP medical records are filed separately
      and under seal as Government's Exhibits 1 and 2.  Also filed under
24    seal is defendant's transfer history that shows his movements to and
      from hospitals and the like.  Defendant is being treated for elevated
25    cholesterol and also has Reynaud's Phenomenon.  In his request for
      release or home confinement to the Warden, defendant stated he was
26    hospitalized for 5 weeks with pneumonia. Govt. Ex. 4.  This seems to
      be inaccurate.  It appears from medical records he had bacterial
27    pneumonia in March 2019, although a lengthy hospital stay isn't
      reflected in the records.  (Govt. Ex. 1, pp. 34-36; Govt. Ex. 3.) Nor
28    do his claims of having movement and movement planning limitations
      (seem to be supported by his medical records.  (Mot. p. 2.)

                                    3

("BOP Senate Testimony"), <u>available at</u>
<u>https://www.bop.gov/resources/news/pdfs/06022020_written_statement.pd</u>
<u>f</u>.

        1.   <u>COVID-19-specific safety precautions</u>

"[M]aintaining safety and security of BOP institutions is [the
BOP's] highest priority."  BOP, Updates to BOP COVID-19 Action Plan:
Inmate Movement (Mar. 19, 2020), <u>available at</u>
<u>https://www.bop.gov/resources/news/20200319_covid19_update.jsp</u>.  The
BOP has never underestimated the threat of infectious disease.  To
the contrary, the BOP has a "well-established history of managing and
responding to communicable disease outbreaks."  BOP Senate Testimony
at 2.

The BOP implemented its Pandemic Influenza Protocol in January
2020, modified as a COVID-19 Action Plan.  BOP, Action Plan Phase V
(Mar. 31, 2020) ("Action Plan Phase V"), <u>available at</u>
<u>https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp</u>

Since then, the BOP has serially escalated its response.  BOP,
Bureau of Prisons Update on COVID-19 (Mar. 24, 2020), <u>available at</u>
<u>https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_co</u>
<u>vid19_update.pdf</u>.

On August 31, 2020, the BOP adopted a comprehensive Pandemic
Response Plan that applies to all BOP facilities.  Federal Bureau of
Prisons, Overview of COVID-19 Pandemic Response Plan, August 31, 2020
<u>available at</u>
<u>https://www.bop.gov/foia/docs//Overview_of_COVID_Pandemic_Response_Pl</u>
<u>an_08312020.pdf</u> ("Pandemic Response Plan").  The eleven modules of
the Pandemic Plan provide for each BOP facility to prepare for,
respond to, and recover from outbreaks of COVID-19.  <u>Id.</u>

Meanwhile, the BOP has continued working with the CDC, confirming that its approach aligns with current CDC guidance for COVID management in correctional facilities.  Federal Bureau of Prisons, Correcting Myths About BOP and COVID-19, at 1, <u>available at</u> <u>https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformat ion_bop_covid19.pdf</u> ("Correcting Myths").

The gravity and severity of these measures reflect BOP's commitment to fighting COVID-19 and protecting inmates.  However, BOP of course has not been immune from the pandemic.  Currently, at defendant's facility (USP Lompoc), there are no inmates who are diagnosed with COVID-19 and only four staff.[2]  An additional 148 previously diagnosed inmates at USP Lompoc have recovered.  Across the country, 1,692 BOP inmates in BOP custody---out of a total of about 150,000---are currently diagnosed with COVID-19; an additional 16, 036 have recovered.  BOP, COVID-19 Coronavirus (updated daily at 12pm Pacific), <u>available at</u> <u>https://www.bop.gov/coronavirus/index.jsp</u> (last visited November 1, 2020).  COVID-19-positive inmates are (or were) isolated from fellow inmates and receiving medical treatment.  Correcting Myths, <u>supra</u>, at 2.  "Inmates whose conditions cannot be managed within the institution are sent to the local hospital[.]"  <u>Id.</u>

---

[2]  Earlier in the pandemic, Lompoc federal prison was a hotspot within the BOP for Covid 19 infections.  There have since been changes made at Lompoc in procedures and protocols which resulted in a significant reduction in cases as mentioned above.  As discussed in <u>United States v. Hernandez</u>, 2020 WL 5203428 (E.D. Cal. Sept. 1, 2020) Lompoc has made changes and implemented sufficient protocols that the prison is now able to adequately respond, monitor, and care for its inmates in relation to Covid 19.  <u>See also</u>, <u>United States v. Risley,</u> 2020 U.S. Dist. LEXIS 148078, *17 (E.D. Cal. Aug. 17, 2020) (and cases cited therein).

As stated above, on August 31, 2020, BOP issued new modules to standardize its response across all of its facilities. A clear illustration that BOP continues to monitor and adjust its protocols.

Of course, "as warned by the Surgeon General of the United States, [the BOP] expect[s] to have more cases as the virus continues to spread in the general community," but they "will continue to diligently support all persons system-wide while doing everything [they] can to do [their] part in mitigating the spread of the virus." Statement from BOP Director, <u>supra</u>.

## III. LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE

A compassionate-release motion is a request for a permanent reduction in a defendant's federal sentence. A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see Dillon v. United States, 560 U.S. 817, 824–25 (2010). Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" 18 U.S.C. § 3582(c)(1).

Because this relief is both drastic and permanent, it is subject to strict statutory conditions.

First, a district court can evaluate a defendant's request for compassionate release only "after the defendant has fully exhausted all administrative rights" before the BOP. 18 U.S.C. § 3582(c)(1)(A).

Second, in evaluating compassionate-release requests, courts must follow both the statute and relevant, binding policy statements.

6

See id.; 28 U.S.C. § 994(t); USSG § 1B1.13.  Pursuant to those authorities, to be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, within the meaning of the statute; and (2) that he is not a danger to the community.  18 U.S.C. § 3582(c)(1)(A).  Specifically, the statute requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission"--in this case, USSG § 1B1.13.  Id.  As the Supreme Court recognized in Dillon, 560 U.S. at 827, because § 3582(c) permits a sentencing reduction only where it is "consistent with applicable policy statements issued by the Sentencing Commission," such policy statements are binding on a court determining eligibility.

USSG § 1B1.13 explicitly defines the "extraordinary and compelling reasons" that make a defendant eligible for compassionate release.  See 28 U.S.C. § 994(t).  They include, as relevant here, (1) a "terminal illness"; (2) a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or (3) a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  USSG § 1B1.13 (other grounds omitted).  USSG § 1B1.13, comment. (n.1(A)-(B)).  "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  Id., comment. (n.3).

Defendant bears the burden to prove both that he has "exhausted all administrative rights" and that "extraordinary and compelling

7

reasons" exist to support his motion.  18 U.S.C. § 3582(c)(1)(A); <u>see</u>
<u>United States v. Greenhut</u>, No. 18-CR-48-CAS,
2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (defendant bears the
burden of establishing entitlement to sentencing reduction); <u>United</u>
<u>States v. Hamilton</u>, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant,
as the § 3582(c)(2) movant, bears the burden of establishing"
eligibility).

   <u>Third</u>, even for defendants who are statutorily eligible,
compassionate release is a "rare" and "extraordinary" remedy, within
district courts' discretion to deny.  <u>United States v. Chambliss</u>, 948
F.3d 691, 693-94 (5th Cir. 2020); <u>United States v. Mangarella</u>, No.
06-CR-151, 2020 WL 1291835, at *2-*3 (W.D.N.C. Mar. 16, 2020).
Specifically, "it is a rare case in which health conditions present
an 'exceptional reason'" to allow for release where detention would
otherwise be warranted.  <u>See, e.g.</u>, <u>United States v. Wages</u>, 271 F.
App'x 726, 728 (10th Cir. 2008) (collecting pre-trial detention
cases); <u>accord</u> <u>United States v. Willis</u>, 382 F. Supp. 3d 1185, 1188
(D.N.M. 2019) ("most courts treat compassionate release 'due to
medical conditions [a]s ... a rare event.").  This reluctance to
expansively apply compassionate release is grounded in a concern that
any less narrow application would yield significant sentencing
disparities.  <u>United States v. Ebbers</u>, 432 F. Supp. 3d 421, 430
(S.D.N.Y. 2020).

## IV.  ARGUMENT

   Defendant's claims must fail: he is not eligible for
compassionate release and, even if he were, the COVID-19 crisis does
not justify a permanent, irrevocable reduction in his sentence, a

sentence that is comprised of two, separate mandatory minimum terms that this court imposed to run consecutively.

### A.   Defendant Has Failed to Demonstrate an "Extraordinary and Compelling" Reason to Allow Release in His Case

Defendant has failed to establish his eligibility for compassionate release.  As the Third Circuit recently held, "[w]e do not mean to minimize the risks that COVID-19 poses in the federal prison system," but the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release"--particularly given "BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." Raia, 954 F.3d at 597.

"The First Step Act did not revise the substantive criteria for compassionate release"--criteria that is set forth in the Sentencing Commission's binding "policy statement," USSG 1B1.13. Ebbers, 2020 WL 91399, at *4—*5; 18 U.S.C. § 3582(c)(1)(A).  Here, defendant does not identify an "extraordinary and compelling reason warrant[ing]" a reduction under that definition.  18 U.S.C. § 3582(c)(1)(A).  He is thus ineligible for compassionate release.

### 1.   Defendant is not medically eligible for compassionate release

As a matter of law, a defendant is eligible for compassionate release only if he can demonstrate "extraordinary and compelling reasons warrant[ing] such a reduction," "consistent with applicable policy statements issued by the Sentencing Commission." Id.  Thus, as courts have recognized, Congress intended that the "Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." United States v. Willingham, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga.

9

Dec. 10, 2019) (noting split in authority).  Cf. United States v. Brooker, 2020 WL 5739712 (2nd Cir. September 25, 2020) (noting split in authority and ruling against the government).  The Sentencing Commission's policy statement--USSG § 1B1.13--is thus binding on this Court under the better-reasoned line of authority.  See Dillon, 560 U.S. at 827; see, e.g., United States v. Nasirun, No. 8:99-CR-367, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020).

"General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]"  United States v. Eberhart, 2020 WL 1450745, *2 (N.D. Cal. Mar. 25, 2020).  Those criteria include, as relevant here:

- The medical condition "of the defendant": specifically, whether the defendant has either a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  USSG § 1B1.13, comment. (n.1(A)(i)-(ii));

- The "age of the defendant": specifically, whether defendant is "at least 65 years old," is "experiencing a serious deterioration in physical or mental health because of the aging process," and has served at least 10 years or 75% of his term of imprisonment.  Id., comment. (n. 1(B)); or

- "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," his

1       illness, age, and family circumstances.  Id., comment.

2       (n.1(D)).[3]

3       The global COVID-19 pandemic is not a factor specific to

4  defendant's case at all--and, while his anxieties are certainly not

5  frivolous, he offers no case-specific facts establishing his

6  eligibility for compassionate release under USSG § 1B1.13.  Although

7  identifying some specific health concerns, defendant primarily

8  emphasizes the general risk of COVID-19: arguments that are general,

9  wide-ranging, and would apply to essentially every inmate presently

10  in custody.

11      "[T]he mere existence of COVID-19 in society and the possibility

12  that it may spread to a particular prison alone cannot independently

13  justify compassionate release."  Raia, 954 F.3d at 597; see also

14  Eberhart, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020) ("a

15  reduction of sentence due solely to concerns about the spread of

16  COVID-19 is not consistent with the applicable policy statement of

17  the Sentencing Commission as required by § 3582(c)(1)(A).").  To

18  classify COVID-19 as an extraordinary and compelling reason, by

19  itself, would be inconsistent with the text of the statute and the

20  policy statement.  Moreover, it would have detrimental real-world

21  effects: interfering with BOP's organized anti-COVID-19 efforts,

22  resulting in the inequitable treatment of inmates, and undercutting

23  the strict criteria BOP employs to determine inmates' eligibility for

24

25 ─────────────

26      [3] Thus, the Court may consider factors set forth in the relevant
   BOP regulation governing compassionate release: BOP Program Statement
   No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures

27  for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (January 17,
   2019), available at

28  https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  Those factors
   make no material difference here.

sentence reductions and home confinement.  Section 3582(c)(1)(A)
contemplates sentence reductions for specific individuals, not the
widespread prophylactic release of inmates and the modification of
lawfully imposed sentences to deal with a viral pandemic.

Defendant's documented health issues do not alter this
conclusion.  Although defendant had Valley Fever with spores (but no
nodular change) in his lungs evident in CT scans, the Centers for
Disease Control has not identified this illness as a high-risk factor
for COVID-19.  Nor does it identify Reynaud's Phenomenon.  See
generally Centers for Disease Control, Coronavirus Disease 2019
(COVID-19)--People Who Are At Higher Risk, available at
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/people-at-higher-risk.html (last accessed November 1,
2020).

Defendant's health concerns do not, by themselves, satisfy USSG
§ 1B1.13: defendant is not, for example, terminally ill, or subject
to a serious and unrecoverable condition that makes him unable to
"provide self-care" within a BOP facility.  USSG § 1B1.13, comment.
(n.1(A)(i)-(ii).  At 38 years of age, he also does not satisfy the
statute's age-related conditions.  Id., comment. (n.1(B)).

Thus, the speculative possibility of COVID-19, even when
combined with defendant's history of Valley Fever, simply does not
present an extraordinary and compelling reason to release defendant
early from his sentence.  A very recent medical encounter at a
hospital paints defendant's health in a rather positive light.
(Govt. Ex 2, pp. 86-88.)  Nor has defendant provided any evidence
that he will be less likely to contract COVID-19 if released.

Defendant's circumstances are--in the present pandemic--far closer to ordinary than "extraordinary."  His motion must be denied.

2. <u>Defendant remains a danger to the community, likewise defeating his eligibility</u>

Defendant's motion--even if properly exhausted, and even if defendant were otherwise eligible for relief--must also be denied because he remains a danger to the community.

This Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13; <u>see</u> <u>United States v. Gotti</u>, No. 02-CR-743, 2020 WL 497987, at *6 (S.D.N.Y. 2020) (release was inappropriate regardless of extraordinary and compelling circumstances; defendant posed a continuing danger to the public); <u>accord</u> <u>United States v. Urso</u>, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019); <u>United States v. Applewhite</u>, No. 08-CR-60037, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate release for seriously ill 80-year-oldinmate based on danger).

The record here precludes any such finding.  To the contrary, defendant poses a very real danger to the community.  Although defendant has no criminal history reflected in the PSR and has had no disciplinary history while incarcerated, defendant trafficked in large quantities of methamphetamine and had a gun in furtherance of his drug trafficking work.  (PSR ¶¶ 69-80.)  In the current climate, irresponsible social habits also gravely endanger the community. <u>United States v. Hir</u>, 517 F.3d 1081, 1088 (9th Cir. 2008) ("community," within the meaning of 18 U.S.C. § 3142, is not necessarily confined to local geography).  All California residents

13

are currently required to "heed the current State public health directives" to avoid the spread of COVID-19.  California Executive Order N-33-20 (March 19, 2020), available at https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf.  Such rules, though enforceable by peace officers, rely largely on voluntary compliance.  A person who ignores such rules could increase infection rates, leading to citizens' severe illness and death.

Finally, defendant's purported rehabilitation alone does not satisfy his burden.  The standard for compassionate release is not just whether someone has performed well in prison.  To the contrary, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  USSG § 1B1.13, comment. (n.3).  Even being a "model inmate" does not warrant an "abrupt departure from [a defendant's] current sentence."  Applewhite, 2020 WL 137452, at *2.  Moreover, because there is a significant difference between doing well in prison and doing well in society, this Court, in evaluating the danger posed by defendant, cannot ignore the nature and circumstances of the offense, defendant's ties to the community, and his criminal history.  18 U.S.C. § 3142(g).  An examination of those factors weighs against early release.

   **B.  Even If Defendant Were Otherwise Eligible, 18 U.S.C. § 3553(a) Factors Do Not Support a Shorter Sentence**

Any compassionate-release decision--even for a statutorily eligible defendant--must also consider the factors under 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A)(i).  Those factors--which this Court already considered when imposing defendant's 180 month

sentence--do not support his request for premature, permanent release.  They support his original sentence.

<u>First</u>, and most centrally, the facts of the case do not merit a reduction of defendant's sentence.  He trafficked in significant amounts of methamphetamine and admitted he had a gun to facilitate his drug trafficking work.  <u>Second</u>, there is no evidence that the BOP is unable to manage defendant's health--particularly given the very low number of reported COVID-19 infections at his designated facility - zero inmates and four staff members.  Indeed, there is nothing to suggest that defendant would be safer outside of custody than in custody.

Particularly considering both how the BOP has addressed COVID-19 generally, and the lack of specific concerns at USP Lompoc specifically, defendant's circumstances are not sufficiently extraordinary and compelling to justify a modified sentence.  Indeed, defendant's arguments totally overlook the BOP's ability to treat infectious disease.  Even chronic conditions "that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 16-cR-130-DAD, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).  Thus, the Court "cannot assume that the Bureau of Prisons will be unable to manage [any] outbreak or adequately treat [defendant] should it emerge at his correctional facility while he is still incarcerated." United States v. Gileno, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate-release motion in COVID-19-related case involving a defendant who raised specific health concerns); accord United States v. Shah, No. 10-70-CJC, ECF No. 329, at 3.  By defendant's logic, such conditions would universally qualify convicted inmates for

15

shorter sentences given the present pandemic.  That is and cannot be the case.

Nor has defendant provided any evidence that he will be less likely to contract COVID-19 if released.  Defendant's circumstances are--in the present pandemic--far closer to ordinary than "extraordinary."  To grant defendant a sentence reduction based such facts would not satisfy the 18 U.S.C. § 3553(a) factors; it would result in a windfall.

Third, it bears emphasis that defendant's health condition is not itself dire--as his own medical and prison records reflect.

Fourth, defendant has failed to propose an adequate release plan--a factor relevant to eligibility, and which the BOP carefully considers before recommending compassionate release.  Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (January 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Defendant must, pursuant to BOP regulations, not only indicate where he will reside and how he will support himself, but how he will "receive medical treatment and how the inmate will pay for such treatment."  Id.  He has failed to do so.[4]  Again, as noted above, his motion does not even make clear how he is less likely to contract COVID-19 if released than at his current institution.

---

[4]  Although not mentioned in this instant motion, in defendant's request for home confinement to the Warden, defendant said he would live in the home he owns.  Although defendant doesn't provide an address, the government assumes he refers to the home his mother placed in his name and used as the location to traffic in methamphetamine. (PSR, ¶¶ 69-80, 128.)  He also claimed he is eligible for Medi-Cal, yet has "many" unspecified jobs "lined up" that provide benefits.  Govt. Ex. 4, p. 4.

At bottom, granting compassionate release would undermine the 18 U.S.C. § 3553(a) factors, resulting in an effective sentence of just 112 months, significantly below the two, consecutive, mandatory minimum terms imposed by this court.  The law, and the specific facts of defendant's case, neither demand nor endorse that result.

**V.   CONCLUSION**

Defendant's motion for compassionate release should be denied for the reasons set forth above.

Finally, the government requests that, if this Court ultimately grants relief, the government be given an opportunity to brief appropriate conditions--including a release plan, a mandatory quarantine, and a period of home confinement as a condition of supervised release.  See 18 U.S.C. § 3582(c)(1)(A).

# Exhibit 4

LOM - 1032479-F1
Part B - Response

This is in response to your Request for Administrative Remedy,
received on July 10, 2020, in which you request a compassionate
release or home confinement.

A review of this matter revealed you have not yet filed for a
compassionate release to the Warden's office for response.
Accordingly, we will log in your request and initiate our review in a
timely manner and assess whether your request meets the criteria
provided in Program Statement 5050.50, Compassionate Release/Reduction
in Sentence: Procedures for Implementation of 18 U.S.C. §§
3582(c)(1)(A) and 4205(g). You will be notified via a separate
memorandum of our decision.

The Bureau of Prisons (BOP) is currently assessing the following
factors to ensure inmates are suitable for home confinement: reviewing
the inmate's institutional discipline history for the last twelve
months; ensuring the inmate has a verifiable release plan; verifying
the inmates' primary or prior offense history does not include
violence, a sex offense, or terrorism related; confirming the inmate
does not have a current detainer; reviewing the security level of the
facility currently housing the inmate, with priority given to inmates
residing in LOW and Minimum security facilities; reviewing the
inmate's PATTERN score, with the inmates who have anything above a
minimum score not receiving priority treatment; and reviewing the age
and vulnerability of the inmate to COVID-19, in accordance with the
CDC guidelines. In addition, the BOP is currently prioritizing for
consideration those inmates who either: have served 50% or more of
their sentences, or have 18 months or less remaining on their
sentences and have served 25% or more of their sentences.

You were sentenced to 21:846 Conspiracy to Distribute and Possession
with Intent to Distribute a Controlled Substance and 18:924
(C)(1)(A)(I) Possession of a Firearm in the Furtherance of a Drug
Trafficking Crime. In accordance with Program Statement,
Categorization of Offenses, your 18:924 Possession of a Firearm charge
is a criminal offense and is considered a crime of violence.
Therefore, you do not fit the current criteria and will not be
considered for home confinement per the CARES Act.

Accordingly, this response is provided for informational purposes
only. If you are not satisfied with this reply, you may submit an
appeal on the appropriate form (BP-10) to the Regional Director,
Western Regional Office, Federal Bureau of Prisons, 7338 Shoreline
Drive, Stockton, CA, 95219, within 20 calendar days of the date of
this response.

Patricia V. Bradley, Complex Warden          Date  8/5/20

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Sendis-Ramirez, Salvador     62012-112     N-Camp     Lompoc F.CCC.
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST**   INMATE NOTICE TOO WARDEN AT LOMPOC F.C.C.

Attached is an inmate notice to Warden Bradley at F.C.C. Lompoc. This notice is
to put fortha motion for Compassionate Release XXXX "OR" Home confinement before
Warden Bradley in hopes that my medical conditions that are well documented at
this institution of Valley Fever& high Cholesteral that together could have been
the trigger that put me in the hospital for a long period of time here at Lompoc,
F.C.C.,(approximately 5 weeks or longer and almost took my life).
This Notice with motion and pre-release plan was deposited in the inmate mail
at Lompoc F.C.C. North Camp on July 5, 2020 to comply with Houston Vs. Lack.
I truly pray that this motion gets the immediate attention that it does need.
Thank you for your time in this matter.

                                        VERY RESPECTFULLY

7-5-2020
      DATE                                         SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
JUL 10 2020
BY:

      DATE                                     WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE**     CASE NUMBER: 1032479-F1

                                                CASE NUMBER: _____

**Part C– RECEIPT**
Return to: _____
                 LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

      DATE                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN     PRINTED ON RECYCLED PAPER     BP–229(13)
                                                    APRIL 1982

Salvador Sendis-Ramirez # 62012-112                                July 5, 2020
Federal Prison Camp
4000, Victory Road
Lompoc, CA.
   93436


Warden Bradley
FEDERAL CORRECTIONS COMPLEX
3901 Klein Boulevard
Lompoc, CA.
   93436

### INMATE MOTION FOR COMPASSIONATE RELEASE "OR" HOME CONFINEMENT.

   Comes now, Inmate Salvador Sendis-Ramirez # 62012-112, who is untrained
in the science of law and must rely on others who are also untrained in law
to assist in this motion for Compassionate Release "OR" Home Confinement
pursuant to newly enacted First Step Act and/or Cares Act which revised
qualifications to where I believe I fit the criteria.

   This Institution has the ability under Program Statement 5050.49 to
reduce an inmate sentence based on a defendants, (inmate), medical circum-
stances. The defendant also has the right pursuant to 3582 (C)(1)(A) to petition
his sentencing Court after following steps addressed in both the First Step Act
and the Cares Act.

   As this Institution is very well aware of, I contracted Valley Fever while
under the care of the Bureau Of Prisons and at this Institution I was diagnosed
with pneuonia which almost took my life. I was hospitalized for approx. 5 weeks.
during this life threatening time I was furloughed which shows that I am a
responsible man and not at any risk of flight. I have also had other furloughs
to specialists around the central district. It is well understood that if I
were to contract the Covid Virus at this Institution, there is strong evidence
that I would not be able to survive. This could turn into a life sentence with-
out the help of this Institution.

   During my incarceration I have been a model inmate with no sanctions or
writeups. I was able to receive my G.E.D. and enrolled in drug class's that
were available. I have obtained my C.D.L. through class's offered by Unicor
where I have a good working record. I have a minimum pattern score and have
worked hard towards my pre-release plan, (enclosed as requested)(medical records
on file her at Lompoc F.C.C.).

   I do know that that my medical condition warrants granting this motion in
hopes of avoiding the possibility of another deadly outcome at this Institution.

                              Very Respectfully
                                                    7-5-2020

                                     1.

I SALVADOR SENDIS ROMIREZ
HAVE A RELEASE PLAN WHICH Includes
the Following

1) My own HOME that BELONGS TO ME
LOCATED in Whittier ca my Address
is Here on File

2) Secondly I Currently Have A CDL
Permit and HAVE MY Driving test
Coming up in 3 weeks to finish with
An obtain my license I have MANY
Jobs Lined up Already that offer
Great Pay & Benefits Such as
Medical, Dental, Vision & Retirement Plan

3) Also Have Support From my Mother
& Siblings that HAVE offered to help
me in Any way that I may NEED.

4) LAST I Also Count with some
SAVINGS to get me By FOR A FEW
Months

5) I'm Aware that in California I
DO Qualify FOR MedicoL CARE AS
Soon AS I get RELEASED.

# Exhibit 5



**U.S. Department of Justice**
**Federal Bureau of Prisons**
**Federal Correctional Complex**

*Office of the Warden*                    *Lompoc, California 93436*

July 30, 2020

**MEMORANDUM FOR SENDIS-RAMIREZ, SALVADOR, REG. NO. 62012-112**

**FROM:**          *for J. Engleman*
                   Patricia V. Bradley, Complex Warden

**SUBJECT:**       Compassionate Release Review

Your request for Compassionate Release/Reduction in Sentence
(RIS) has been reviewed pursuant to Program Statement 5050.50,
Compassionate Release/Reduction in Sentence: Procedures for
Implementation of 18 U.S.C §§3582(c)(1)(A) and 4205 (g). It has
been determined that we will not be pursuing a request for
compassionate release/RIS in your case.

A review of the documentation you provided was reviewed and
considered, in addition to a review of your central file and
medical records. Based on this review, it was determined you do
not meet the criteria to be considered for a Compassionate
Release/RIS based on medical circumstances. Therefore, you do
not meet the criteria in which the Bureau of Prisons would file
a motion the court.

Accordingly, your request is denied. If you are not satisfied
with this reply, you may submit an appeal on the appropriate
form (BP-9) to this office within 20 calendar days of the date
of this response.

MAILED

AUG 0 3 2020

FILE COPY

## <u>CERTIFICATE OF SERVICE</u>

I, **CONNIE HOM,** declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of the United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California, 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

## UNITED STATES' OPPOSITION TO DEFEDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A): EXHIBITS

**service was:**

[ ] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

**[X]** Placed in a sealed envelope for collection and Mailing via United States Mail, addressed as follows:

[ ] Electronic Mail

[ ] By facsimile as follows:

[ ] By hand delivery

[ ] By federal express as follows:

Salvador Sendis-Ramirez No. 62012-112
USP Lompoc Satellite Camp
3705 West Farm Road
Lompoc, California 93436

This Certificate is executed on, November 3, 2020, Los Angeles, California        .
I certify under penalty of perjury that the foregoing is true and correct.

_/s/ Connie Hom_
**CONNIE HOM**